UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Thomas Kuznar, as administrator of the "Estate of
Emilia Piastowska Kuznar (11 P 6624), Deceased",

        Plaintiff,

v.

Anna Kuznar,

        Defendant.

Case No. 1:11-cv-09229
HON. JOAN HUMPHREY LEFKOW

## ANNA KUZNAR'S MOTION TO DISMISS PLAINTIFF'S INITIAL PLEADING PURSUANT TO FRCP 12(b)(6), 12(b)4), 12(b)(2) AND 12(b)(7)

**NOW COMES** Anna Kuznar by and through her attorneys, and for her Motion To Dismiss Plaintiff's Initial Pleading Pursuant To FRCP 12(b)(6), 12(b)(4), 12(b)(2) and 12(b)(7) states:

1. Anna Kuznar asserts that the initial pleading filed on behalf of the newly opened Estate of the deceased Emilia Piastowska requesting a judgment against Anna Kuznar is defective as a pleading and thus fails to state a claim upon which relief can be granted in ways which include, but are not necessarily limited to, the following:

    a. The initial pleading by this newly opened Estate with regard to an ERISA-governed pension plan and benefits, was erroneously filed as a motion for summary judgment when it should have been initiated as a new complaint. The Estate of the foreign decedent, Emilia Piastowska, was allowed to be opened in the Cook County Circuit Court in December 2011 (herein sometimes "Emilia's Estate"). (See paragraph 9 of Plaintiff's initial pleading.) This Estate is a newly-created entity. Like any other person or entity, Emilia's Estate must comply

1

with applicable statutes and court rules. However, when Emilia's Estate chose to file a request for relief in Illinois, instead of filing a complaint as required pursuant to 735 ILCS 5/2-201(a) (which provides that "[e]very action, unless expressly provided by statute, shall be commenced by the filing of a complaint. The clerk shall issue summons upon request of the plaintiff . . .") the Estate inexplicably filed a "motion for summary judgment" as its initial pleading without any complaint first being filed.

      b.      In addition, instead of being filed as a new complaint with its own caption and case number, the "motion for summary judgment" was erroneously filed under the case number and case caption of the estate of another deceased individual, Mitchell Kuznar – an estate proceeding in which the Estate of the foreign decedent Emilia is not a party. Moreover, the relief being sought in this initial pleading by Emilia's Estate involves ERISA proceeds which are not a probate asset of Mitchell Kuznar who died in 1995. The "motion for summary judgment" by Emilia's Estate only requests relief against Anna Kuznar and does not request any relief against or on behalf of Mitchell's Estate or allege that the "motion" involves any probate asset of Mitchell's Estate.

      c.      The initial "motion" pleading by Emilia's Estate fails to adequately set forth a cognizable legal claim or facts sufficient to support a legal claim. The "motion" makes a conclusory allegation about "federal ERISA laws" (see paragraph 6 of Plaintiff's initial pleading) but fails to allege what provisions of federal law Emilia's Estate is relying on for its request for relief. In addition, the "motion" fails to allege facts sufficient to support any legal claim against Anna Kuznar.

      d.      In addition, the initial "motion" filed on behalf of Emilia's Estate is incorrect in its form and fails to comply with the requirements of FRCP 3, 8(a) and 10.

2. The initial pleading by Emilia's Estate ("motion for summary judgment") requesting a judgment against Anna Kuznar is also defective because <u>no</u> summons was ever sought or issued. Pursuant to FRCP 4(c) a summons must be served with a copy of the complaint. (See also 735 ILCS 5/2-201(a) cited in paragraph 1(a) above). Here, where there was no summons and hence no "process" issued at all it is clear that there was "insufficient process" under FRCP 12(b)(4), thus requiring dismissal.[1]

3. Because of the defects described above, including but not limited to, the failure to name Anna Kuznar as a Defendant even in the caption of the defective "motion" pleading initially filed by Plaintiff and the failure to have a summons issued against her, this court lacks personal jurisdiction over Anna Kuznar, requiring dismissal of the Plaintiff's "motion for summary judgment" under FRCP 12(b)(2).

4. Plaintiff's initial pleading requesting a judgment against Anna Kuznar is also defective for failing to join a necessary party under FRCP 19 in that the request for relief against Anna Kuznar alleges apparently that certain ERISA pension plan proceeds were wrongly distributed to Anna Kuznar but fails to join as a defendant the party which made those payments, the administrator of the 401(k) plan (the Kraft Plan), and in that it asks the court to interpret the terms of the ERISA 401(k) pension plan without joining as a defendant the administrator of that plan.

5. Anna Kuznar incorporates by reference herein the Brief filed in support of this Motion.

WHEREFORE, Anna Kuznar respectfully requests that this Honorable Court grant the following relief:

---

[1] A summons sets forth a time frame and procedure for a defendant to respond and raise any answer, affirmative defenses and counterclaims that the defendant may have. If a Court allowed a Plaintiff to bypass the normal process due to a party against whom a judgment is sought by filing a motion under some other party's preexisting case number (as the plaintiff did in this case) rather than a complaint and summons, thus eliminating a defendant's ability to file and adjudicate defenses or counterclaims he/she may have, it would constitute a violation of due process guarantees under the U.S. Constitution.

A.   Issue an order dismissing Plaintiff's initial pleading ("motion for summary judgment") because it is defective and fails to state a claim upon which relief can be granted under FRCP 12 (b)(6), because there was no process issued and hence process was insufficient under FRCP 12(b)(4), because the Court lacks personal jurisdiction of Anna Kuznar under FRCP 12(b)(2), and/or because it fails to join a necessary party under FRCP(b)(7).

B.   Award costs and attorney fees to Anna Kuznar.

C.   Award such other and further relief to Anna Kuznar as the Court deems warranted.

Respectfully submitted,

RENTROP & MORRISON, P.C.

Dated: January 9, 2012         By: _____
                                    Gary R. Rentrop (P19367)
                                    Susan E. Morrison (P30834)
                                    Attorneys *Pro Hac Vice*
                                    for Anna Kuznar
                                    40950 Woodward Ave., Suite 300
                                    Bloomfield Hills, MI 48304
                                    (248) 644-6970

_____ by SEM per consent
Adam J. Augustynski
Attorney for Anna Kuznar
5850 W. Bryn Mawr Avenue
Chicago, IL 60646; 773-0044; Attorney Number 27556

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Thomas Kuznar, as administrator of the "Estate of
Emilia Piastowska Kuznar (11 P 6624), Deceased",

Plaintiff,

v.

Anna Kuznar,

Defendant.

Case No. 1:11-cv-09229
HON. JOAN HUMPHREY LEFKOW

## BRIEF IN SUPPORT OF ANNA KUZNAR'S MOTION TO DISMISS UNDER FRCP 12(b)(6), 12(b)(4), 12(b)(2) AND 12(b)(7)

Background

The estate of the foreign decedent, Emilia Piastowska, was allowed to be opened in the Cook County Circuit Court in December of 2011 (see paragraph 9 of Plaintiff's initial pleading filled as a "motion for summary judgment"). This newly-created entity ("Emilia's Estate") through its appointed administrator inexplicably filed this "motion for summary judgment" seeking a judgment in the amount of $207,504.79 against Anna Kuznar as its initial pleading without any complaint being first filed or any summons issued.

Anna Kuznar (now 77 years old), despite being married to Mitchell Kuznar in Illinois for over 24 years, and caring for him until his death in 1995, was nonetheless deemed to be the putative spouse (rather than legal spouse) of the deceased Mitchell Kuznar by the Illinois appellate court in 2004. However, a putative spouse under Illinois law acquires "the rights conferred upon a legal spouse," and where there is a legal spouse and a putative spouse the "court shall apportion property, maintenance and support rights among the claimants as appropriate in the circumstances and in the interests of justice." 750 ILCS 5/305 [emphasis

1

added]¹. The significant rights of putative spouses were recognized in a prior decision from the Northern District of Illinois, <u>Central States Pension Fund v. Susie Bell Washington Gray and Gwendolyn Bernice Gray</u>, 2003 WL 22339272 (U.S. District Court, N.D. Ill, Case No. 02 C 8381, Oct. 10, 2003) (unpublished, attached hereto as Exhibit A) – a case which also involved the analysis of how surviving spouse benefits should be distributed under an ERISA pension plan in a situation where there was a legal spouse and a putative spouse. To date, no putative spouse apportionment hearing has ever been held by any court to determine what apportionment is appropriate as between Emilia Piastowska and Anna Kuznar.

<u>Argument</u>

A. <u>Plaintiff's Initial Pleading Should be Dismissed Under Rule 12(b)(6), (b)(4) and (b)(2) of the Federal Rules of Civil Procedure.</u>

In addressing the defective initial pleading filed by the Plaintiff without any summons being sought or issued, several of the FRCP 12(b) defenses are intertwined. FRCP 12(b)(6) sets

---

¹ 750 ILCS 5/305 provides in full:
> "§ 305. Putative spouse. Any person, having gone through a marriage ceremony, who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. <u>A putative spouse acquires the rights conferred upon a legal spouse,</u> including the right to maintenance following termination of his status, whether or not the marriage is prohibited, under Section 212, or declared invalid, under Section 301. <u>If there is a legal spouse</u> or other putative spouse, <u>rights acquired by a putative spouse do not supersede the rights of the legal spouse</u> or those acquired by other putative spouses, but <u>the court shall apportion property, maintenance and support rights among the claimants as appropriate in the circumstances and in the interests of justice.</u> This Section shall not apply to common law marriages contracted in the State after June 30, 1905." [emphasis added]

Cases discussing this statute include the following: <u>Daniels v. Retirement Board of the Policeman's Annuity and Benefit Fund</u>, 106 Ill.App.3d 412, 62 Ill.Dec. 304, 435 N.E. 2d (1st Dist.1982); and <u>In Re Marriage of Flores</u>, 96 Ill.App3d 279, 51 Ill.Dec. 885, 421 N.E.2d 393, 395 (1st District 1981).

forth the defense of "failure to state a claim upon which relief can be granted" as a defense that may be asserted by motion before a responsive pleading. FRCP 12(b)(4) and 12(b)(2) set forth, respectively, the defenses of "insufficient process" and "lack of personal jurisdiction" that may be asserted by motion before a responsive pleading.

In examining Plaintiff's initial pleading, multiple defects are apparent on its face. FRCP 3 provides that a "civil action is commenced by filing a complaint with the court." Illinois law similarly provides at 735 ILCS 5/2-201 that "[e]very action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint. The clerk shall issue summons upon request of the plaintiff . . . ." FRCP 10 provides, in pertinent part as follows with regard to the form of pleadings:

> **(a) Caption; Names of Parties**. Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties . . . .
> **(b) Paragraphs; Separate Statement**. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . .

FRCP 8 provides in pertinent part:

> **(a) Claim for Relief**. A pleading that states a claim for relief must contain:
> \* \* \* \*
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FRCP 4(a) further provides what is required in the contents of a summons which must be signed by the court clerk, and FRCP 4(c) requires that "[a] summons must be served with a copy of the complaint."

Plaintiff's initial pleading is defective because it not only fails to name in the caption the party against whom it requests a judgment – Anna Kuznar – but erroneously includes in the

caption the name and case number of the deceased Estate of Mitchell Kuznar even though the request for relief asks for no relief against (or on behalf of) Mitchell's Estate nor does it involve any probate asset of Mitchell Kuznar.

Plaintiff's initial pleading also is defective and fails to state a claim because it does not adequately set forth a cognizable legal claim or facts sufficient to support a legal claim against Anna Kuznar. Conclusory allegations by the Plaintiff regarding "federal ERISA laws" (in paragraph 6 of Plaintiff's initial pleading) with no statutory citations at all or any allegations as to the material elements of any claim, are too vague to comply with the minimum requirement under FRCP 8(a)(2) of showing how the Plaintiff is entitled to the relief requested. Further, the allegations of Plaintiff appear to relate to distribution of pension benefits, which are actions of the plan administrator as opposed to Anna Kuznar. As stated by the Court in Pleva v. Norquist, 195 F.3d 905, 911 (7th Cir.1999):

> A complaint is properly dismissed under 12(b)(6) if looking only at the pleadings, taking all the facts alleged by the plaintiff to be true, and construing all inferences in favor of the plaintiff, the plaintiff fails to state a claim upon which relief can be granted.

See also, Stevens v. Umsted, 921 F.Supp. 530, 532 (C.D. Ill. 1996) ("Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless 'must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'")

Plaintiff's initial pleading is also defective because Plaintiff failed to obtain a summons as required when a suit is initiated under either federal or Illinois law. This lack of a summons means there has been insufficient process under FRCP 12(b)(4). This fundamental defect should result in dismissal of Plaintiff's initial pleading.

Because of the defects either under FRCP 12(b)(6) or 12(b)(4) described above, there is also no personal jurisdiction over Anna Kuznar and this Court should order dismissal of Plaintiff's initial pleading under FRCP 12(b)(2). See, for example, Robinson v. Turner, 886 F. Supp. 1460, 1461- 1462 (S. D. Ind. 1995) and cases cited therein ("Some courts do not make a distinction between the two motions [FRCP 12(b)(5) and 12(b)(2)] because, where there has been insufficient service of process, the court does not have personal jurisdiction over the individual.")

B.  Plaintiff's Initial Pleading Should be Dismissed Under Rule 12(b)(7) of the Federal rules of Civil Procedure.

FRCP 12(b)(7) sets forth the defense of "failure to join a party under Rule 19" as a defense that may be asserted by motion before a responsive pleading. FRCP 19(a)(1) provides as follows:

> "**(1) Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

The Plaintiff's initial pleading is based on a pension plan governed by ERISA and the Plaintiff makes certain allegations (in paragraph 6 of the initial pleading) about required "distribution." The party who makes distributions under an ERISA pension plan is the plan administrator. Since the Plaintiff is asking the Court to interpret the terms of the pension plan and to rule on whether or not certain distributions by the administrator were lawful, the court

should dismiss the initial pleading of Plaintiff for failing to join that plan administrator as a necessary party. Clearly when there is apparently an allegation of unlawful conduct by the plan administrator (distributions which violate ERISA), that person should have the opportunity to defend against such an allegation. Failure to join the 401(k) plan administrator will "impair or impede" the pension plan's ability to protect its interests and hence it is a necessary party under FRCP 19(a)(1). See, e.g., Lester v. Framatome, ANP, Inc., 2006 WL 28500012 (W.D.Va. 2006) (unpublished, attached as Exhibit B) (court ordered ERISA pension plan joined as a necessary party); and General Houses v. Reconstruction Finance Corporation, 81 F. Supp. 202 (N.D. Ill. 1948) (court *sua sponte* dismissed an amended complaint for failure to join an indispensable party).

## CONCLUSION

For the reasons set forth above and in the motion filed herewith, Anna Kuznar respectfully requests that this Honorable Court grant the relief requested in her Motion to Dismiss Under FRCP12(b)(6), 12(b)(4), 12(b)(2) and 12(b)(7).

Respectfully submitted,

RENTROP & MORRISON, P.C.

Dated: January 9, 2012        By: _____
                              Gary R. Rentrop (P19367)
                              Susan E. Morrison (P30834)
                              Attorneys *Pro Hac Vice*
                              for Anna Kuznar
                              40950 Woodward Ave., Suite 300
                              Bloomfield Hills, MI 48304
                              (248) 644-6970

_____ by SEM per consent
Adam J. Augustynski
Attorney for Anna Kuznar
5850 W. Bryn Mawr Avenue
Chicago, IL 60646; 773-0044; Attorney Number 27556

6        2012/R&M Clients/Smolak/Pleadings/US District Court – Illinois/Brief in Support of Motion to Dismiss.doc

# EXHIBIT A

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2003 WL 22339272 (N.D.Ill.), 31 Employee Benefits Cas. 1748, Pens. Plan Guide (CCH) P 23985T
(Cite as: 2003 WL 22339272 (N.D.Ill.))

C

United States District Court,
N.D. Illinois, Eastern Division.
CENTRAL STATES, Southeast and Southwest Areas Pension Fund, and Howard McDougall, trustee, Plaintiff,
v.
Susie Bell Washington GRAY and Gwendolyn Bernice Gray, Defendants.
No. 02 C 8381.

Oct. 10, 2003.

MEMORANDUM OPINION AND ORDER

PLUNKETT, Senior J.

*1 This interpleader action comes before us on the cross-motions of defendant Susie Bell Washington Gray ("Susie") and defendant Gwendolyn Bernice Gray ("Gwendolyn") for summary judgment. For the following reasons, Susie's motion is denied and Gwendolyn's motion is granted. We find that Gwendolyn is John's "surviving spouse" and is entitled to the fifty percent surviving spouse benefit.

Facts

The facts in this case are undisputed. John Henry Gray ("John") married Susie in December 1965 in Louisiana. They separated in 1970, and a formal judgment of separation was entered by the First Judicial District Court of Caddo Parish, Louisiana on August 18, 1971. No divorce decree was ever obtained. Undeterred, Susie then married Milton Lee ("Milton") in August 1973 in Louisiana and John married Patricia Gray ("Patricia") in October 1984, even though Susie and John's marriage was never legally terminated. John divorced Patricia in June 1997 and married Gwendolyn in Texas in February 2000. John remained married to Gwendolyn until his death in May 2001. Susie is still married to Milton.

John was covered by the Central States, Southeast and Southwest Areas Pension Fund (the "Fund"). The Fund administers the Central States, Southeast and Southwest Areas Pension Plan, an employee pension benefit plan covered by ERISA [FN1] (the "Plan"). The Plan provides, among other benefits, a fifty percent Joint and Surviving Spouse lifetime benefit ("JSS Benefit") to the surviving spouse of a deceased Plan participant. The amount of the JSS Benefit varies with each recipient, depending upon the Plan participant's covered service, as defined in the Plan documents, and the age of the recipient.

> FN1. ERISA is the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq.

Upon John's death, Gwendolyn applied for the JSS Benefit and the Fund paid her $305.97 [FN2] each month from June 2001 through November 2001. Susie applied for the JSS Benefit in March 2002, stating that she was the surviving spouse of John. Uncertain as to who is John's surviving spouse, the Fund suspended payments to Gwendolyn and brought this interpleader action. The Fund has deposited $5,738.43 in an account with the Court for past due pension benefits and will make future JSS Benefit payments to whomever is determined to be John's surviving spouse.

> FN2. The Fund has since determined that Gwendolyn's JSS Benefit, should it be determined that she is the proper recipient, is $302.97 per month for life rather than $305.97. If Susie is the rightful recipient of the JSS Benefit, her monthly payment would be $314.05. (Compl.¶¶ 6, 31.)

On June 23, 2003, Susie moved for summary judgment, claiming that she was still legally married to John at the time of his death and that the JSS Benefit should be paid to her. She submitted a support-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT A**

Page 2
Not Reported in F.Supp.2d, 2003 WL 22339272 (N.D.Ill.), 31 Employee Benefits Cas. 1748, Pens. Plan Guide (CCH) P 23985T
(Cite as: 2003 WL 22339272 (N.D.Ill.))

ing affidavit in which she states she was married to John on December 6, 1965 in Caddo Parish, Louisiana. She also states that she and John had one child, Kenneth, born in December 1966, that she and John separated in January 1970 but that they never divorced, and that she was still married to John at the time of his death in May 2001. (Susie Gray Mot. Summ. J. Ex. A.) She also submitted a copy of her and John's marriage license and a copy of the judgment of separation from a Louisiana court. (*Id.* Exs. B, C.) In addition, Susie has attached an opinion letter from Billy R. Casey, an attorney in Shreveport, Louisiana. Casey opined that, under Louisiana law, Susie and John were still legally married to each other at the time of John's death, but the community property between Susie and John ended on the date the legal separation was filed. Casey also opined that Susie was entitled to one-half of any 401K pension earned from the date of their marriage to the filing date of the legal separation and that under Louisiana law, Kenneth was entitled to the remainder of the 401K pension. (*Id.* Ex. D.)

*2 Gwendolyn also filed a motion for summary judgment asserting her right to receive the JSS Benefit. In support, Gwendolyn submitted an affidavit which states that she was married to John in February 2000 and remained married to him until his death in May 2001. (Gwendolyn Gray Mot. Summ. J. Ex. 6.) Gwendolyn also submitted copies of Susie's petition for separation and custody, filed in Caddo Parish, Louisiana in June 1971, and judgment of separation, rendered in August 1971. (*Id.* Ex. 2.) Also submitted with her motion was a copy of Milton's affidavit for a marriage license, which indicates that Susie had no prior marriage, and a copy of her and John's marriage license, issued in Texas. (*Id.* Exs. 3, 5.)

Discussion

This motion presents the following issue: who is John's "surviving spouse" and thus, the rightful recipient of the JSS Benefit-Susie, who married John, legally separated from him but never divorced him and then subsequently married another, or Gwendolyn, who participated in a marriage ceremony with John in 2000 and remained married to him until the time of his death?

We first look to the words of the Plan itself for guidance but find precious little there to help; we find a definition of "dependent child" but no definition of "spouse" or "surviving spouse." Because there is no federal domestic relations law and marriage and divorce are traditional subjects of state regulation, we must look to state law to determine who (Susie or Gwendolyn) is the "surviving spouse" under the Plan. *Croskey v. Ford Motor Company-UAW,* 2002 WL 974827, at *4 (May 6, 2002 S.D.N.Y.). Three states' laws are potentially applicable in this case: Illinois, where the Plan is administered; Louisiana, where Susie and John were married and where Susie continues to reside; and Texas, where Gwendolyn and John were married and lived at the time of John's death.

Gwendolyn argues that Illinois law should govern. In support of that position, she refers us to a section of the Plan which states: "All questions pertaining to the validity of construction of this Pension Plan shall be determined in accordance with the laws of the State of Illinois and, to the extent of preemption with the laws and regulations of the United States." (Compl. Ex. A § 7.11.) Gwendolyn argues that under Illinois law, Susie should be equitably estopped from claiming to be John's lawful spouse. Susie intended to end her marriage to John, as evidenced by the legal separation, and presumably believed, in fact, that the marriage was legally terminated, as evidenced by Susie's subsequent marriage to Milton. According to Gwendolyn, it would be inequitable and unfair to now allow Susie to reap the benefits of being John's spouse when Susie took advantage of the end of the marital relationship.

Gwendolyn argues that even if Illinois law does not apply, under Louisiana law, the result is the same. In Louisiana, even if a marriage is null due to some impediment, such as one party's prior undissolved marriage, civil effects still flow from that null mar-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3
Not Reported in F.Supp.2d, 2003 WL 22339272 (N.D.Ill.), 31 Employee Benefits Cas. 1748, Pens. Plan Guide (CCH) P 23985T
**(Cite as: 2003 WL 22339272 (N.D.Ill.))**

riage in favor of the party who contracted the marriage in good faith, that party being known as a "putative spouse." Gwendolyn argues that she contracted the marriage with John under a reasonable and honest belief that the marriage was valid and with no knowledge of the legal impediment. As a putative spouse, she claims she is entitled to the JSS Benefits.

*3 Susie argues against the application of Illinois law, stating that this issue is not a matter of pension plan construction and that Illinois has no nexus with the issue involved. She argues instead for the application of Louisiana law and relies on Casey's legal opinion in support of her right to receive the JSS Benefits.

We do not find Louisiana law applicable; the only connection that state has with the parties is that it is where Susie currently lives, and where she and John were married and obtained their legal separation. Although neither Gwendolyn nor Susie addressed the applicability of Texas law, we find that law to be applicable here. The question before us concerns who is John's "surviving spouse," and it seems that the law of John's domicile at death provides the proper reference. *See Croskey,* 2002 WL 974827, at *5 (looking to law of insured's domicile at death to determine who is lawful widower in ERISA case because insured's domicile is state most interested in questions of insured's marital status).

Looking to Texas law, we find that Gwendolyn is the rightful recipient of the JSS Benefits. Like Louisiana, Texas has the concept of "putative spouse" and "putative marriage". "A putative marriage is one that was entered into in good faith by at least one of the parties, but which is invalid by reason of an existing impediment on the part of one or both of the parties." *Garduno v. Garduno,* 760 S.W.2d 735, 738 (Tex.App.1988). Where a putative marriage exists, a putative spouse acting in good faith has the same right in property acquired during the marital relationship as if she were a lawful spouse. *Id.* at 739. We find that Gwendolyn and John's marital situation fits these circumstances. Good faith on the part of Gwendolyn is presumed; we have no reason to believe that she was aware that John's prior marriage to Susie was not dissolved. *See id.* at 740.

In addition, Texas courts have applied an acceptance-of-the-benefits doctrine to prevent one from collaterally attacking a divorce decree when one has previously accepted the benefits of the decree. *See Hawkins v. Hawkins,* 999 S.W.2d 171, 178 (Tex.App.1999). The doctrine is based on the equitable principle of estoppel and precludes a litigant from accepting the benefits of a judgment and then subsequently challenging that portion of the judgment affording him those benefits. *See Carle v. Carle,* 234 S.W.2d 1002, 1004 (Tex.1950). Although Susie and John never divorced, we find the principles expressed by this doctrine applicable here. Susie has accepted the benefit of the termination of her marital relationship with John for the past thirty years as she married Milton in 1973 and remains married to him.[FN3] *See Hawkins,* 999 S.W.2d at 178 (remarriage by a party to a divorce estops that party from attacking the marriage dissolution).

> FN3. We think it significant that Susie omitted certain relevant facts from her motion for summary judgment, namely that she married Milton in 1973 and remains married to him. We draw no conclusion, however, from the fact that Susie's prior marriage to John was omitted from Milton's marriage license application. (Gwendolyn Gray Mot. Summ. J. Ex. 3.) Gwendolyn states that Susie committed fraud by failing to include her prior marriage on the application. Susie correctly points out, however, that the affidavit application was made by Milton.

Our analysis of Texas law leads us to conclude that Gwendolyn is John's putative spouse, thus John's surviving spouse under the Plan and the proper recipient of the JSS Benefits. Moreover, this conclu-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4
Not Reported in F.Supp.2d, 2003 WL 22339272 (N.D.Ill.), 31 Employee Benefits Cas. 1748, Pens. Plan Guide (CCH) P 23985T
**(Cite as: 2003 WL 22339272 (N.D.Ill.))**

sion is consistent with Congress's goal of protecting the economic security of surviving spouses when it modified the survivor annuity provisions of ERISA in 1984 to make them more protective of surviving spouses. *See Boggs v. Boggs* 520 U.S. 833, 843-844 (1997). Nothing submitted to us leads us to reasonably conclude that Susie has economically relied on John since their separation or that she anticipated receiving a monetary benefit upon John's death because she was his spouse. *See Butler v. Bolinger,* 133 So. 778 (La.Ct.App.1931) (a separation "a mensa et thoro" in Louisiana terminates the legal regime of community property).

*4 Even if Illinois law applied, we would find the same result. First of all, we note that for certain domestic matters, Illinois relies on the principles contained in the Restatement (Second) of Conflicts (the "Restatement") to resolve conflict-of-laws questions. *In re Marriage of Adams,* 551 N.E.2d 635, 639 (Ill.1990). Section 283 of the Restatement says: "The validity of a marriage will be determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the marriage...." Restatement (Second) of Conflict of Laws § 283 (1971). This brings us back into the realm of Texas law, which we have already discussed.

Under Illinois substantive law, Gwendolyn is a putative spouse. The Illinois Marriage and Dissolution of Marriage Act says:

> Any person, having gone through a marriage ceremony, who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse.... A putative spouse acquires the rights conferred upon a legal spouse ... whether or not the marriage is prohibited, under Section 212, or declared invalid, under Section 301. If there is a legal spouse or other putative spouse, rights acquired by the putative spouse do not supercede the rights of the legal spouse or those acquired by other putative spouses, but the court shall apportion property, maintenance and support rights among the claimants as appropriate in the circumstances and in the interests of justice.

750 ILCS 5/305 (1999). The state recognizes that Gwendolyn has certain rights as a putative spouse but also recognizes that Susie has certain rights. However, the statute demands that we apportion property and rights "as appropriate in the circumstances and in the interests of justice." Under this framework, we conclude that the JSS Benefits should be paid to Gwendolyn.

We come to this conclusion applying the same equitable principles discussed above. Illinois courts have applied the rule of estoppel in family law cases. "The rule of estoppel [is] founded upon the public policy of protecting the marital status and good character of innocent third persons...." *Forest v. Forest,* 291 N.E.2d 880, 882 (Ill.App.Ct.1973) (action to set aside divorce decree). We find the application of the rule of estoppel appropriate in this case. By accepting the benefits of a terminated marital relationship (by way of a judgment of legal separation) with John, it would be contrary to public policy to allow Susie to now reject the termination of the relationship and receive insurance benefits as a surviving spouse.[FN4] *See Goodman v. Goodman,* 260 N.E.2d 257, 260 (Ill.App.Ct.1970) (defendant's challenge to validity of divorce decree was barred by estoppel where defendant received substantial property from divorce).

> FN4. In addition, we note that the vast majority of the benefits at issue were earned by John after the judgment of separation was final and during the time Susie was married to Milton.

The facts here lead us to only one conclusion: equity mandates that Gwendolyn, who married John in good faith and lived with him as his wife until his death, is John's surviving spouse under the Plan and the proper recipient of the JSS Benefits. Accordingly, defendant Gwendolyn Gray's motion for summary judgment is granted; defendant Susie Gray's motion for summary judgment is denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2003 WL 22339272 (N.D.Ill.), 31 Employee Benefits Cas. 1748, Pens. Plan Guide (CCH) P 23985T
**(Cite as: 2003 WL 22339272 (N.D.Ill.))**

Conclusion

*5 For the reasons stated above, we grant defendant Gwendolyn Gray's motion for summary judgment and deny defendant Susie Gray's motion for summary judgment. This is a final and appealable or- der.

N.D.Ill.,2003.
Central States v. Gray
Not Reported in F.Supp.2d, 2003 WL 22339272 (N.D.Ill.), 31 Employee Benefits Cas. 1748, Pens. Plan Guide (CCH) P 23985T

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B



Page 1

Not Reported in F.Supp.2d, 2006 WL 2850012 (W.D.Va.)
**(Cite as: 2006 WL 2850012 (W.D.Va.))**

H
Only the Westlaw citation is currently available.

United States District Court,
W.D. Virginia.
Samuel Robert LESTER, Plaintiff,
v.
FRAMATOME, ANP, INC. Defendant.

No. Civ. 6:06CV00015.
Sept. 29, 2006.

Samuel Robert Lester, Lynchburg, VA, pro se.

David E. Constine, III, Andrew Philip Sherrod, Troutman Sanders LLP, Richmond, VA, for Defendant.

*ORDER and OPINION*
MOON, J.

*1 This matter is before the Court on Defendant's unopposed Motion to Dismiss for failure to name a necessary party, filed by Framatome, ANP, Inc. ("Framatome") on August 14, 2006 (docket no. 7). For the following reasons, the Court hereby GRANTS in part and DENIES in part Defendant's motion. Pursuant to Rules 12( b)( 7) and 19 of the Federal Rules of Civil Procedure, the Court hereby ORDERS that the "Employee Retirement Plan of Framatome ANP, Inc. and Participating Subsidiary and Affiliated Companies" be ADDED as a defendant in this action.

I. Background

Plaintiff is seeking benefits from Defendant under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (2000). (*See* Compl. para. 17) ("I am asking the court to require Framatome ... to pay me monthly early retirement benefits....")

As Defendant has pointed out, assuming without deciding that Plaintiff is entitled to such benefits, the liability for paying those benefits would lie not with Framatome but instead with Framatome's employee retirement plan. (Br. in Supp. of Framatome ANP's Mot. to Dismiss for Failure to Name a Necessary Party 1) That plan is known as the Employee Retirement Plan of Framatome ANP, Inc. and Participating Subsidiary and Affiliated Companies ("Framatome Plan"). (Br. in Supp. 1)

II. Standard of Review

Rule 12( b)( 7) of the Federal Rules of Civil Procedure allows a Court to dismiss an action for failure to join a party in accordance with Rule 19. *See, e.g., RPR & Assocs. v. O'Brien/Atkins Assocs.,* 921 F.Supp. 1457, 1463 (M.D.N.C.1995); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359 (3d ed. 2004) ("Rule 12( b)( 7) permits a motion to dismiss when there is an absent person without whom complete relief cannot be granted...."). On a Rule 12( b)( 7) motion, the Court initially determines if the absent party should be joined as a party in accordance with the criteria set forth in Rule 19(a)(1). *See RPR,* 921 F.Supp. at 1463. Rule 19(a)(1) requires a party to be joined to an action if three criteria are met: (1) the party is subject to service of process; (2) the joinder will not deprive the court of subject matter jurisdiction; and (3) in the party's absence, complete relief cannot be accorded among those already parties. *See* Fed.R.Civ.P. 19(a)(1). If the court determines that all three criteria are met, the party will be ordered to join the action and dismissal of the action is not required. *See RPR,* 921 F.Supp. at 1463.

III. Discussion

Here, Plaintiff apparently seeks relief under 29 U.S.C. § 1132(a)(1)(B), which allows participants or beneficiaries to bring a civil action to recover benefits due him under terms of an employee welfare benefit plan. 29 U.S.C. § 1132(a)(1)(B) (2000). As Plaintiff is seeking early retirement benefits from the Framatome Plan, that entity appears to be a necessary party. More specifically, Rule 19(a)(1) requires joinder of the Framatome Plan if (1) it is subject to service of process; (2) joinder of the Framatome Plan would not deprive the Court of subject matter jurisdiction; and (3) in the absence of the Framatome Plan from this action, Plaintiff could not be accorded complete relief.

*2 Defendant points out in its brief that the Framatome Plan meets all three criteria. The Frama-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT B**

Not Reported in F.Supp.2d, 2006 WL 2850012 (W.D.Va.)
**(Cite as: 2006 WL 2850012 (W.D.Va.))**

tome Plan is subject to service of process (Br. in Supp. 6), joinder of the Framatome Plan would not destroy subject matter jurisdiction (Br. in Supp. 6) ("[A]s this matter is undisputedly one involving a federal question arising under **ERISA**, its presence would not affect the Court's jurisdiction over this matter."), and Plaintiff here cannot be accorded complete relief if the Framatome Plan were not added (Br. in Supp. 4-5) ("[T]he relief sought by Plaintiff ... would come from the assets of the Framatome Plan, and not from Framatome itself. Thus, in the absence of the Framatome Plan, complete relief cannot be accorded.").

This Court finds, therefore, that the Framatome Plan is a necessary party under Rule 19(a)(1) and should be joined in this action. The Court hereby ORDERS that the "Employee Retirement Plan of Framatome ANP, Inc. and Participating Subsidiary and Affiliated Companies" be ADDED as a defendant in this action.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

W.D.Va.,2006.
Lester v. Framatome, ANP, Inc.
Not Reported in F.Supp.2d, 2006 WL 2850012 (W.D.Va.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.